WILLIAM B. REYNOLDS *vs.* THE OCEAN INSURANCE COMPANY.

When an underwriter, who has refused to accept an abandonment of a stranded vessel, takes possession of the vessel *for the purpose of removing, repairing, and restoring* her to the owner, he is bound to use due diligence and despatch, as well in removing as in repairing her; and want of such diligence and despatch in removing her, operates as a constructive acceptance of the abandonment, although the repairs are afterwards made *with reasonable despatch.*

The underwriter's duty and liability, in such case, are not varied by a clause in the policy of insurance, that " the acts of the assurer, in *recovering, saving, and preserving* the property insured, in case of disaster, shall not be considered an acceptance of an abandonment"; such clause being inserted *diverso intuitu.*

THIS was an action upon a policy of insurance on the brig Gem, in which the plaintiff sought to recover for a total loss. The brig sailed from Philadelphia for Boston, on the 8th of April, 1837. On the evening of the next day, she struck on a shoal, which caused her to leak very badly; and she was, for that reason, voluntarily stranded for preservation of all concerned. She lay on the inside of Cape May Beach until the 20th of June following, when she was got off, under the direction of the defendants' agent, and carried to Philadelphia, where she arrived on the 24th of the same June, and was there repaired.

On the 20th of April, 1837, the plaintiff wrote a letter to the defendants, abandoning the brig, and claiming a total loss

On the next day, the defendants informed the plaintiff that they did not accept said abandonment. On the 31st of July following, the defendants informed the plaintiff, by letter, that the brig was completely repaired, and ready to be delivered to his order, at Philadelphia. To this letter the plaintiff made no reply.

The policy contained this clause. " The acts of the assured or assurers in recovering, saving, and preserving the property insured, in case of disaster, shall not be considered a waiver or acceptance of an abandonment."

At the trial before *Dewey*, J., the plaintiff put his case on the ground that the defendants had, by operation of law, accepted the abandonment by unreasonable delay in getting off and repairing the brig. He admitted, that after the brig arrived at Philadelphia, the repairs were made with due diligence ; but he alleged that the defendants took possession for the purpose of getting her off, repairing her, and restoring her to the owner, and thus discharging their contract ; and that as they took possession to get her off, only as a necessary step in the repairs, they were bound to use due diligence as well in removing as in repairing her.

The defendants contended, that until the repairs were begun, they were not bound to use diligence and despatch, and therefore that if they were not duly diligent and prompt in removing the brig from the beach, and carrying her to a place of safety, yet this did not evince, nor amount to, an acceptance of the abandonment. They also contended, that there was no acceptance of the abandonment, if thei · measures, in attempting to remove the brig, were such as a prudent owner, uninsured, would adopt

The judge ruled, that if the defendants, after the abandonment and refusal to accept it, took possession and control of the brig, having at that time the actual purpose and design of getting her off, repairing, and restoring her to the assured, they were, from the time when they took possession for such purpose and with such intention, bound to use reasonable diligence as well in getting her off as in making repairs after her arrival in port ; and that if they delayed beyond a reasonable time, they made themselves answerable as for a constructive acceptance of the aban-

14 *

donment, and for a total loss. The judge also instructed the jury, that the mere act of entering upon the property for the purpose of recovering, saving, and preserving it, was not to be considered as an acceptance of the abandonment, and that the exercise o' this right was not to charge the defendants, because such right was secured by a clause in the policy.

There was no evidence of any act done or offered, by the plaintiff or either of the owners, for the purpose of removing the brig from the beach.

The defendants contended, that until it should be proved that they took exclusive possession of the brig, for the purpose of getting her off and repairing her, and thus hindered and prevented the plaintiff from coöperating with them, the duty of diligence and despatch did not attach to them, and that therefore the want of such diligence and despatch did not evince, nor amount to, an acceptance of the abandonment. They also contended that until the commencement of the repairs, there was no such exclusive possession.

It was left wholly to the jury to find when the defendants took possession and control of the brig.

Much of the controversy, at the trial, related to the fitness of the persons employed by the defendants' agent to remove the brig, and to the judgment, vigor, and skill of their operations.

A general verdict was returned for the plaintiff, and the defendants moved for a new trial because of misdirection in matter of law.

*Choate* and *Crowninshield*, for the defendants.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiff.

SHAW, C. J. The right of an insurer, after refusing to accept notice of an abandonment, and when the owners themselves have manifested their intention not to get off and repair the vessel, to take possession of her, and repair and restore her in a sound condition to the assured, is a peculiar privilege. This is not within the direct provisions of the contract of insurance, but it has been held as one of the incidental consequences of the relation arising out of that contract, that if the insurers can make the necessary repairs, and thereby show that the loss did not

amount to fifty per cent. according to the computation made in adjusting a partial loss, and can tender the ship to the assured, restored and made whole, it is a good compliance with their contract of indemnity, and a good defence to a claim for a total loss. But it has been held as a strict condition, that this must be done within a reasonable time. And in the case of *Peele* v. *Suffolk Ins. Co.* 7 Pick. 257, where the rule itself is definitely laid down, it is said, " that underwriters must do this as expeditiously as possible, in order that the voyage, if it be not completed, may not be destroyed." And it is added, " if he delay the repairs beyond a reasonable time, he forfeits his right to return the ship, and must be considered as taking her to himself under the offer to abandon."

The defendants' counsel, at the trial, and again on the argument, admitting the rule to be so, in regard to the act of repairing, contended that until the commencement of the repairs at Philadelphia, the defendants were not bound to the duty of diligence and despatch, and therefore if they did not use due diligence in removing the vessel from the beach, and carrying her to a place of safety, it did not amount to an acceptance of the abandonment.

There is a clause in the policy, that no act done by the insurers, towards saving the property, shall be deemed to be a constructive acceptance of an abandonment ; and hence it is argued, that whether the acts are done promptly and actively, or tardily and negligently, can make no difference, and that whatever may be the character of such acts, they are protected by the policy from being regarded as evidence of an acceptance of the abandonment. Supposing this view to be correct, still taking possession of the vessel, for another and distinct purpose, is not within this provision in the policy. The act is qualified by the intent and purpose with which it is done. If done solely with a view to save the property, the underwriters were at liberty to do such acts or not, as they should see fit, and do them in their own time. If done with an intent to repair and restore the vessel, then it was to be done with reasonable diligence and despatch, on peril of making the vessel their own, by taking her

into custody.   This was the view of the subject taken at the trial, and the jury were accordingly instructed, that if the insurers, after the abandonment and refusal to accept, took possession and control of the vessel, with the purpose and design of getting her off, repairing, and restoring her, they were bound, from the time they took possession with that intention, to use reasonable diligence, as well in getting her off, as in repairing her after her arrival in port.   This instruction we think was correct; and the jury were sufficiently cautioned against any misapprehension on the subject, by the further instruction, that the mere act of entering on the property, for the purpose of recovering, saving, and preserving the property, is not to be considered as an acceptance of the abandonment.

The extent to which the acts of persons will be characterized, and their effect determined and governed by the intentions with which they are done, is nowhere more strikingly illustrated, than in the principles of insurance law.   In many cases, acts done with one purpose will be justified, when the same acts, done with another, will vacate the policy.   It has often been held, that it is no deviation to depart from a direct line, for any of the ordinary purposes of navigation ; and if a master alters his course with any view to avoid a current, or to take the wind to better advantage, or any purpose connected with the navigation of the vessel, it is no deviation.   But it was held, in *Parr* v. *Anderson*, 6 East, 202, where a master altered his course a quarter of a point, and pursued it a quarter of an hour, for the purpose of pursuing an enemy, when he had no liberty to chase or make prizes, that it was a deviation, which discharged the insurers. In all such cases, the purpose with which an act is done is a question of fact to be decided by a jury, upon evidence.

The ground, and the only ground, upon which the underwriters can defend· themselves, in a case like the present, is, that they have restored, or tendered, the vessel to the assured, repaired and made whole, and fit for use, within a reasonable time. All the same reasons, which require reasonable diligence and despatch in actually making the repairs, apply with equal force to all the anterior proceedings incident and necessary to such restoration.

These reasons are, that during the whole of the time, as well whilst getting the vessel off, as whilst the repairs are making, the voyage is delayed, the owners are deprived of the use of their vessel, and the insurers are withholding her, under a claim which can be justified only on the ground that they proceed with due diligence. Were it necessary to the decision of this case, we are inclined to think, that within the principle laid down on this subject, it is necessary, if the insurers intend to repair and restore the vessel, that they come to that determination and act upon it promptly, and that due diligence is as requisite to the engineering operations of getting the vessel from the strand, as the mechanical operations at the ship-yard, after she reaches it ; because both are necessary to an actual restoration, within a reasonable time. It is to be regarded as one entire act, governed by the object and purposes with which it is done.

In the case cited, *Peele* v. *Suffolk Ins. Co.*, it was found by the jury, that the vessel was not repaired and offered to be restored in a reasonable time ; and on this ground, the court decided against the underwriters, without distinguishing between the act of taking possession and getting the vessel off, and the act of making the repairs upon her, when removed. But it is not necessary now to decide what would be the effect of delay in taking possession. In the present case, the jury have found, that after the defendants took possession and control of the vessel, with the purpose and design of getting her off, repairing, and restoring her to the assured, they did not use reasonable diligence ; and we are therefore of opinion, that the vessel was not tendered within reasonable time ; that by the delay, the defendants forfeited their right to return her, and must be considered as having accepted the abandonment.

*Judgment on the verdict.*